UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
STEVEN F. SCULLY,                                      :

       Plaintiff,                                      :

       -v.-                                                  :      OPINION AND ORDER

                                                              :      16 Civ. 7211 (GWG)

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,                :

       Defendant.[1]                                       :
-----------------------------------------------------------------x
GABRIEL W. GORENSTEIN, United States Magistrate Judge

       Plaintiff Steven F. Scully brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability benefits under the Social Security Act. Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[2] For the reasons stated below, Scully's motion is granted and the Commissioner's motion is denied.

I. BACKGROUND

     A. Procedural History

       Scully applied for Disability Insurance Benefits on July 30, 2013. See Certified Administrative Record, filed Dec. 27, 2016 (Docket # 10) ("R."), at 154. The Social Security

---

    [1] Nancy A. Berryhill is substituted as the defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

    [2] See Notice of Motion for Judgment on the Pleadings, filed Mar. 22, 2017 (Docket # 16); Plaintiff's Memorandum of Law in Support of his Motion for Judgment of the Pleadings, filed Mar. 22, 2017 (Docket # 17) ("Pl. Mem."); Notice of Motion, filed May 30, 2017 (Docket # 22); Memorandum of Law in Support of Defendant's Motion for Judgment on the Pleadings and in Opposition to the Plaintiff's Motion for Judgment on the Pleadings, filed May 30, 2017 (Docket # 23) ("Comm'r Mem."); Plaintiff's Reply Memorandum, filed June 19, 2017 (Docket # 24); Reply Memorandum of Law in Further Support of Defendant's Motion for Judgment on the Pleadings, filed July 5, 2017 (Docket # 25).

Administration ("SSA") denied Scully's application on September 24, 2013. R. 88-92.[3] He requested review of the SSA's decision by an Administrative Law Judge ("ALJ"), R. 96-97, and a hearing was held on January 22, 2015, see R. 31-62. In a written decision dated April 23, 2015, the ALJ found that Scully was not disabled. R. 14-26. Scully requested review of the ALJ's decision by the Appeals Council, R. 1-6, but it denied his request on July 18, 2016, R. 7-10. Scully filed his complaint on September 15, 2016, seeking review of that final decision.

B. The Hearing Before the ALJ

Scully was represented by attorney Scott Goldstein at the hearing before the ALJ. R. 33. Mr. Goldstein agreed with the ALJ that there was "a complete medical record" at the time of the hearing. Id.

Scully testified that he was involved in a traffic accident while working as a service technician on March 7, 2013, which caused injuries to his back. R. 34-35. Since the accident he had suffered from chronic back pain, numbness in his legs, loss of balance, inability to walk more than a few blocks, and inability to stay seated longer than 15-20 minutes. R. 35-36, 45. His lower back pain radiated down his legs and caused numbness in his feet, which in turn impaired his balance. R. 41, 44. The week before the hearing this balance trouble caused him to fall and hurt his shoulder, although he had not seen a doctor for that injury at the time of the hearing. R. 41-42. Scully had problems standing and walking, as "when walking any extended distance it will aggravate the pain . . . [and] the numbness gets worse and [his] balance diminishes as the pain increases." R. 45. The motion of his spine when bending or twisting was

---

[3] Scully also apparently applied for supplemental security income ("SSI") benefits on July 29, 2013. See R. 74. The SSA denied this application on August 6, 2013, because Scully had "too much income to be eligible for SSI." R. 74-87. Scully did not seek review of this decision.

"not good," R. 46, and it was difficult to do something "as simple as taking a gallon of milk out of the refrigerator," R. 39.

Concerning daily activities, Scully testified that he stayed at home with his seven-year-old daughter and eight-month-old son, and took care of his infant son for about six hours during the day. R. 39-40. His son weighed about 15 pounds, and Scully could lift him to diaper him or change his clothing, but with significant pain. R. 40. Scully said that his wife had to do the laundry, bathe his son, and shop for groceries. R. 48. He also testified that he could drive for around 25 minutes, but that anything longer than that required he "stop and get out of the vehicle and walk." R. 41, 49. At home, Scully spent "[t]wo or three hours combined" laying down, and could manage on his own despite his limitations on sitting and standing because he could switch positions at will. R. 47.

Scully had been treated with "several injections, which include[d] epidural injections, medial branch blocks, nerve block injections, [and] trigger points," as well as medication. R. 46. He was given a trial neurostimulator for seven days by pain management doctor Peter Zheng, which "worked out very well." R. 36-37; see also R. 458-59 (follow-up notes from Dr. Zheng). Although he was seeking approval from Worker's Compensation for a permanent neurostimulator, without it he felt "absolutely horrible," and had "the same problems [he] had before." R. 37-38. Scully testified that "of all the treatment [he] received in the past two years [the neurostimulator is] the only thing that [he] had any type of forward production with." R. 46.

The ALJ called a vocational expert witness ("VE"), whom Scully's counsel stipulated was "an expert in vocational rehab." R. 50. Scully had testified that his past work as a propane service technician "involve[d] sales, service, installation, diagnostic, repair, [in]stalling of oil tanks, [and] installing of propane tanks." R. 51. Using this testimony, the VE classified Scully's

previous work as "medium" type work. R. 52.

The ALJ then described a person of Scully's age, education, and work experience who could perform only sedentary work; could only occasionally bend, kneel, squat, or lift; could lift no more than 10 pounds; and could sit for six hours and stand for four hours — that is, alternating between sitting and standing by having a short stretch break every 30 minutes. R. 52. The VE testified that such a person could perform the jobs of order clerk, call out operator, and charge account clerk, all of which existed in significant numbers in the national economy. R. 52-53. She said that all of these jobs would permit "a sit/stand type of option" so long as the person remained in the work station when taking a stretch break. R. 53. Although the VE said that the "[Dictionary of Occupational Titles] doesn't necessarily address the sit/stand option," the rest of her testimony was consistent with that document, and in her own experience all of those jobs "would allow for somebody to stand up as needed." R. 53-54. But if the hypothetical person had to walk away from the work station and would be off task "every half hour for five to 10 minutes," the person could not perform those jobs. R. 58. The VE also testified that while these jobs "fit within the sedentary category," they would not require lifting. R. 58-59.

   C. Medical Evidence

Both Scully and the Commissioner have provided summaries of the medical evidence contained in the administrative record. See Pl. Mem. at 8-14; Comm'r Mem. at 4-12. The summaries are substantially consistent with each other. The Court had directed the parties to specify any objections they had to the opposing party's summary of the record, see Scheduling Order, filed Feb. 15, 2017 (Docket # 15), at ¶ 5, and neither party has done so. Accordingly, the Court adopts the plaintiff's and the Commissioner's summaries of the medical evidence as accurate and complete for purposes of the issues raised in this suit. We discuss the medical

4

evidence pertinent to the adjudication of this case in section III below.

D.  The ALJ's Decision

The ALJ denied Scully's application for benefits on April 23, 2015.  R. 17-26.  The ALJ found that Scully met the insured status requirements of the Social Security Act and had not engaged in substantial gainful activity since his alleged onset date of March 7, 2013.  R. 19. While the ALJ found that Scully had a severe back impairment and was obese, he found that other conditions about which Scully complained, such as hyperlipidemia, sleep apnea, and impaired fasting glucose, were "controlled, minimally treated or lack[ed] specific complaints," and thus "result[ed] in no more than minimal functional limitations."  Id.  He also acknowledged a right shoulder injury Scully allegedly suffered just before his hearing, but found the condition "not severe" because the record contained "no objective medical evidence of a diagnosis, treatment, or functional limitations with respect to" Scully's right shoulder.  R. 20.

The ALJ found that Scully's impairments did not meet or medically equal an impairment listed in 20 C.F.R. part 404, subpart p, appendix 1.  Id.  The ALJ specifically considered Listing 1.04, disorders of the spine, see 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04 ("Listing 1.04"), but found that "the medical evidence fail[ed] to establish that [Scully's] conditions [rose] to the level of severity contemplated by that Listing."  R. 20.  The ALJ found that "per the evidence detailed below," there was "no evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss, and a positive straight-leg raising test (sitting and supine); spinal arachnoiditis; or, lumbar spinal stenosis resulting in pseudoclaudication."  Id.  The ALJ also took Scully's obesity into account, but found the record lacking "specific allegations that this condition is disabling," or that it had a substantial impact

5

on his other conditions, given that "no medical treatment [was] recommended although diet, portion control, and exercise have been advised." Id.

Turning to Scully's residual functional capacity ("RFC"), the ALJ found that Scully could perform sedentary work because he could sit for a total of eight hours per day, sitting or standing for one hour at a time before taking a one-minute stretch break; stand and walk for a total of four hours during a work day; perform occasional bending, stooping, and crouching, and frequent reaching, handling, and fingering; and could lift and carry objects that weighed up to 10 pounds. Id. The ALJ acknowledged the back injury Scully suffered as a result of a motor vehicle accident, as well as his complaints of pain, but noted that Scully was successfully treated with a neurostimulator on a trial basis. R. 21. The ALJ observed that Drs. Jeffrey W. Degen, Steven K. Jacobs, and Marc H. Appel found relatively normal conditions, including full range of motion and strength in Scully's extremities, normal gait and station, normal alignment of the discs in Scully's spine other than bulging at the L2-3 through L5-S1 vertebrae, "intact sensation to light touch and pinprick" as of December 2014, and "no radiographic explanation" for Scully's symptoms in March 2013. R. 22-23. The ALJ accorded "great weight" to the January 2015 opinion of Dr. Appel, who limited Scully to "sedentary activities" and who noted that Scully could not "sit or stand more than one hour at a time." R. 23 (emphasis in original).

As to Scully's credibility, the ALJ found that Scully's "ability to perform a full range of activities of daily living . . . confirms that he is not as debilitated as he alleges." Id. The ALJ noted that multiple doctors reported that a neural spine stimulator trial provided Scully with significant relief from pain. See R. 22-23. The ALJ also noted Scully's testimony that he was a "stay-at-home dad" for his two children, one of whom was a "20 pound[]" infant at the time of the hearing, and that he could drive a motor vehicle for a half-hour and stand for 20 minutes at a

6

time. R. 21. The ALJ found that "[t]he abilities to drive a motor vehicle and care for an infant child show a considerable ability to perform physical activities, so it is reasonable to conclude that [Scully] would be able to perform at least sedentary types of activities." R. 23. While the ALJ noted that Scully's obesity and history of back and lower extremity problems would "adversely impact . . . his ability to walk/stand," he found that his RFC assessment accounted for these limitations. R. 24.

While the ALJ acknowledged that Scully could not return to his past work as an HVAC technician, he found that jobs existed in significant numbers in the national economy that Scully could perform. R. 24-25. Scully was 32 years old at the time of the hearing — a "younger individual" under the regulations — and had at least a high school education. R. 24. The ALJ relied on the VE's testimony that an individual with Scully's age, education, and RFC could perform the requirements of order clerk, call out operator, and charge account clerk. R. 25. The ALJ determined that the VE's testimony was consistent with the Dictionary of Occupational Titles "except with respect to the issue of the claimant requiring a one minute stretch break after sitting or standing for one hour," but accepted the VE's testimony that, based on "her knowledge and experience in the field," those occupations would permit the sitting and standing options described. Id.

Because there was work in significant numbers in the national economy that Scully could perform, the ALJ found that Scully was not disabled. Id.

II. GOVERNING STANDARDS OF LAW

    A. Scope of Judicial Review Under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record

7

and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008); Matthews v. Leavitt, 452 F.3d 145, 152 n.9 (2d Cir. 2006); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted). Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)). The Second Circuit has characterized the substantial evidence standard as "a very deferential standard of review — even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam). "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Id. (emphasis in original) (citations and internal quotation marks omitted). "The role of the reviewing court is therefore quite limited

and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (citations and internal quotation marks omitted). Importantly, it is not a reviewing court's function "to determine de novo whether [a claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (citation and internal quotation marks omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012).

B.  Standard Governing Evaluation of Disability Claims by the Agency

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

Regulations issued pursuant to the Social Security Act set forth a five-step process that the Commissioner must use in evaluating a disability claim. See 20 C.F.R. § 404.1520(a)(4); see also Burgess, 537 F.3d at 120 (describing the five-step process). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20

C.F.R. § 404.1520(a)(4)(I). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. § 404.1520(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. § 404.1520(c). Third, if the claimant's impairment is severe and is listed in 20 C.F.R. part 404, subpart P, appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his age, education, or work experience. See id. § 404.1520(a)(4)(iii). Fourth, if the claimant's impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's RFC to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work." Id. § 404.1520(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC permits the claimant to do other work. Id. § 404.1520(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. Id. The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

III. DISCUSSION

Scully's main argument is that the ALJ did not "properly consider whether [Scully's] positive findings during physical examination met or equaled" Listing 1.04. Pl. Mem. at 14. He also argues the ALJ erred in failing to consult a medical expert; improperly assessed the medical evidence in the record, including the combined impact of Scully's impairments on his RFC; and improperly found Scully's testimony incredible. Id. at 17-19. We begin by considering Scully's arguments as to Listing 1.04 and then address the ALJ's RFC determination.

A. <u>Listing 1.04</u>

Scully says that the ALJ "simply made the conclusion" that Scully did not meet the requirements of Listing 1.04 and "did not do any analysis[ ] of the medical evidence in evaluating whether the Listing was met." Id. at 14. Because his brief does not claim that Scully suffered from spinal arachnoiditis or lumbar spinal stenosis, which appear in Listing 1.04(B) and 1.04(C), we assume he is arguing only that he meets the requirements of Listing 1.04(A).

Listing 1.04(A) requires — in addition to a spinal disorder such as a herniated disc, arthritis, degenerative disc disease, or a vertebral fracture —

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Listing 1.04(A). Scully argues that there is evidence of (1) "nerve root compression characterized by a neuro-anatomic distribution of pain" based on MRIs and EMGs; (2) "limitation of motion of the lumbar spine" based on observations from Drs. Appel, Jacobs, Sunitha Polepalle, and Zheng; (3) "motor loss and muscle weakness" based on evidence from Drs. Gotesman, Polepalle, and Zheng; (4) accompanying sensory or reflex loss, as observed by Drs. Appel, Degen, Jacobs, Polepalle, and Zheng; and (5) positive straight-leg raising tests noted by Drs. Appel, Gotesman, Jacobs, Polepalle, and Zheng. Pl. Mem. at 14-17.

Instead of specifying why the medical evidence demonstrated that Scully did not meet this listing's requirements, the ALJ referred to "the evidence detailed below." R. 20. This reference is permissible, provided the ALJ supports this determination elsewhere in his or her opinion. See <u>Berry v. Schweiker</u>, 675 F.2d 464, 468 (2d Cir. 1982) ("[A]bsence of an express rationale does not prevent us from upholding the ALJ's determination regarding appellant's

11

claimed listed impairments, since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence."); accord Solis v. Berryhill, — F. App'x —, 2017 WL 2416900, at *2 (2d Cir. June 5, 2017) (summary order).

Here, the record contained substantial evidence to support the conclusion that Scully's impairments did not meet or medically equal the severity of Listing 1.04 — most obviously based on a lack of "[e]vidence of nerve root compression." Dr. Degen's examination of Scully on June 26, 2013, found that his extremities had a normal range of motion and full strength. R. 335. Reviewing a March 20, 2013, MRI, Dr. Degen observed that "[t]here does not appear to be any spinal canal stenosis or clear evidence of nerve root compression," and that "[c]learly the S1 nerve roots were not compressed," although Scully did "have facet arthropathy which is worst at L4/5." Id. An August 2, 2013, CT lumbar myelogram[4] showed normal alignment and discs, patent canal and foramina, clear recesses, and intact posterior elements from T12 to S1, with normal nerves and conus within the spinal canal and with the thoracic cord and canal "grossly intact." R. 341. A June 30, 2014, MRI found annular bulging from L2-3 through L5-S1, but it was found that "exiting nerve roots are intact." R. 429.

In light of this evidence, the ALJ could conclude that Scully did not suffer from nerve root compression. See, e.g., Beall v. Colvin, 2017 WL 1155809, at *4 (N.D.N.Y. Mar. 27, 2017) (substantial evidence supported finding that plaintiff did not meet Listing 1.04(A) where MRI results showed no evidence of nerve root compression). To meet a listed impairment, a claimant must demonstrate that he or she suffers from all of the listed criteria, no matter how severe any one particular element of the listing may be. Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990);

---

[4] A lumbar myelogram is a radiographic contrast study used to diagnose herniated or slipped discs. See Steadman's Medical Dictionary 1171 (27th ed. 2000).

accord Solis, 2017 WL 2416900, at *2.  While plaintiff argues that certain medical findings suggest that Scully had nerve root compression, see Pl. Mem. at 15; Pl. Reply at 2, plaintiff's argument does not alter the fact that substantial evidence exists to support the ALJ's conclusion that Scully did not suffer from nerve root compression.  See generally Johnson, 563 F. Supp. 2d at 454 ("If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists.").

Scully also objects that if the ALJ believed there was not enough evidence in the record to find that he met the requirements of the Listing, "the ALJ had the prerogative to enlist the aid of a medical expert."  Pl. Mem. at 17.  Certainly the ALJ has an obligation to develop the record. See Shaw, 221 F.3d at 131 ("The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings . . . .") (citing Schaal, 134 F.3d at 505; and Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)); see also Sims v. Apfel, 530 U.S. 103, 111 (2000) (ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits") (citing Richardson, 402 U.S. at 400-01). However, it is well established that "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,'" as was true here, "the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)); see also Serianni v. Astrue, 2010 WL 786305, at *5 (N.D.N.Y. Mar. 1, 2010) ("An ALJ is not obligated to send a litigant for a consultative examination if the facts do not warrant or suggest the need for such an examination.").

In sum, because there is substantial evidence that Scully did not suffer from nerve root compression during the relevant period, substantial evidence supports the ALJ's finding that Scully did not meet Listing 1.04.

B. RFC Determination

In making an RFC finding, "[a]n ALJ considers medical source statements and all other evidence in the case record." Lamboy v. Comm'r of Soc. Sec., 2017 WL 3493250, at *7 (S.D.N.Y. Aug. 15, 2017) (citing 20 C.F.R. § 404.1545(a)) (additional citation omitted). SSA regulations require that the ALJ "evaluate every medical opinion [the ALJ] receive[s]," that he or she give "controlling weight" to a treating source's opinion as to the "nature and severity of [a claimant's] impairment(s)" if consistent with other substantial evidence in the record, and that he or she "give good reasons in [his or her] . . . decision for the weight" given to a treating source not granted controlling weight. 20 C.F.R. § 404.1527(c). The Commissioner's resolution of conflicting evidence is entitled to deference. See, e.g., Cage, 692 F.3d at 122; Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (when record contains conflicting evaluations of claimant's condition, "it [is] within the province of the ALJ to resolve" that conflict). Nonetheless, an ALJ must offer "good reasons" for his or her decision, and courts do not hesitate to remand when the Commissioner has not provided them. Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004); accord Greek, 802 F.3d at 375; Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).

Here, the ALJ failed to mention the opinions and treatment notes of Drs. Polepalle and Zheng, pain management physicians who had treated Scully for over a year, see generally R. 455-88. The statements and opinions of these treating sources could support a more limited RFC than the ALJ found. Dr. Jacobs, for example, observed in June 2014 that Scully had pain and difficulty with lifting, pushing, pulling, and bending; difficulty maintaining a seated or standing

14

position for more than 20 to 30 minutes; difficulty finding a comfortable sleeping position; and that prolonged sitting or standing in one position would cause Scully radiating pain to both legs "producing intermittent weakness in the legs as well as paresthesias." R. 424. Subsequent reports, including one in January 2015, found that Scully's condition was "about the same." See, e.g., R. 493.[5] Dr. Zheng, seeing Scully on November 20, 2014, noted that Scully had "intractable pain . . . associated with fatigue, impaired walk tolerance, and difficulty sleeping, concentrating and performing activities of daily living." R. 460.

The Commissioner attempts to explain away this deficiency by arguing that "[t]he ALJ is not required to reconcile every shred of conflicting evidence," and claiming that "just because an ALJ does [not] cite an examination finding in the record does not mean that it was not considered." Comm'r Mem. at 21. Certainly, the ALJ need not cite every piece of evidence. In this case, however, the uncited evidence consisted of extensive notes of treating physicians and contained findings inconsistent with the ALJ's conclusions. Nothing suggests that the ALJ considered the findings of Drs. Polepalle and Zheng, let alone explains how he weighed their findings in determining Scully's RFC. Thus, remand is appropriate. See, e.g., Lopez v. Sec'y of Dep't of Health & Human Servs., 728 F.2d 148, 150-51 (2d Cir. 1984) (finding grounds for remand "when it appears that the ALJ has failed to consider relevant and probative evidence which is available to him"); accord Gomez v. Comm'r of Soc. Sec., 2017 WL 1194506, at *17 (S.D.N.Y. Mar. 30, 2017) ("[R]emand may be warranted where an ALJ fails to mention parts of the record which contradict his conclusion.") (citations and internal quotation marks omitted).

On remand, the ALJ may wish to obtain medical source statements from certain of

---

[5] Although Dr. Jacobs said he "ordered a Function Capacity Evaluation to assess [Scully's] limitations" on January 16, 2015, R. 495, that evaluation is not in the record.

Scully's treating physicians who did not opine on his limitations. See generally Hooper v. Colvin, 199 F. Supp. 3d 796, 814-16 (S.D.N.Y. 2016) (discussing circumstances where it may be necessary to obtain medical source statements). Also, we note that while Dr. Appel's reference to Scully being "unable to sit or stand more than one hour," R. 502, was likely intended to mean that Scully could only sit or stand for one hour "at a time" as the ALJ concluded, R. 23, the ALJ may wish to seek clarification on this point. The ALJ is free to take any other action consistent with this opinion.

Because the remand will likely create a record that differs from what is presented here, we do not reach Scully's other arguments.

IV. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Docket # 22) is denied and Scully's motion for judgment on the pleadings (Docket # 16) is granted. The case is remanded to the SSA for further proceedings consistent with this opinion. The clerk is requested to enter judgment and to close the case.

SO ORDERED.

Dated: October 10, 2017
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge